# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON S. BLATT, | CASE NO. 1:03-CV-6181-OWW-SMS-P |
| Plaintiff, | ORDER DISMISSING COMPLAINTS, WITH LEAVE TO AMEND |
| v. | |
| PAUL M. SCHULTZ, et al., | (Docs. 1 and 10) |
| Defendants. | |

I.  Screening Order

    A.  Screening Requirement

Plaintiff Leon S. Blatt ("plaintiff") is proceeding pro se and in forma pauperis in this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides a remedy for violation of civil rights by federal actors. Plaintiff filed this action on September 2, 2003. On November 5, 2003, plaintiff filed an amended complaint.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[1] 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

---

[1] Although plaintiff is no longer incarcerated, he was a prisoner when he brought this action.

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

B.   Plaintiff's Claims

The events at issue in this action allegedly occurred at the Federal Detention Center-Seatac in Washington, the Federal Correctional Institution-Sheridan in Oregon, and United States Penitentiary-Atwater in California. Plaintiff is seeking both injunctive relief and monetary damages. Because plaintiff is no longer incarcerated at the facilities in question, his claims for injunctive relief are moot and may not be pursued in this action. Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).

Ordinarily, the amended complaint supercedes the original complaint, once filed. In this instance, however, because plaintiff states in his amended complaint that he is incorporating by reference the claims in his original complaint, the court will screen both complaints. Plaintiff is notified that the court will make this exception only this once. In the future, there shall only be one operative pleading, and all claims must be set forth in that one pleading.

1.   Original Complaint

In his original complaint, plaintiff alleges claims for relief for violation of the Equal Protection Clause and for denial of access to the courts. Plaintiff names the United States Bureau of Prisons (BOP), the BOP Regional Correctional Services Administrator, and USP-Atwater Warden Paul M. Schultz as defendants.

Plaintiff alleges that his custody level was raised erroneously by staff. As a result, plaintiff was transferred to USP-Atwater. Plaintiff alleges that he should have been housed at a lower-level facility. Plaintiff alleges that one day after his transfer to USP-Atwater, he was confronted by neo-Nazi inmates, who told plaintiff, a Jew, that he had better seek protective custody. Several weeks later, plaintiff was attacked and injured by two inmates he did not know Plaintiff alleges that he was then placed in the "hole." Plaintiff alleges that he was never given a hearing or any paper documentation. Plaintiff alleges that a hearing was subsequently conducted out of his presence and he was given a term of one year, until his release date from prison.

Plaintiff alleges he encountered difficulties in litigating his cases, was not provided with adequate supplies, was denied equal access to the law library, and was not provided with legal calls or legal copies. Plaintiff alleges this his mail from the courts was opened and that his ability to mail out legal documents was hindered. Plaintiff further alleges that the actions taken against him may have been the result of the perception of prison officials that plaintiff was a jailhouse lawyer, although plaintiff denies being one.

### a. BOP as a Defendant

Plaintiff names the Bureau of Prisons as a defendant in his original complaint. Bivens provides a cause of action against individual officers for acting unconstitutionally. Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001). Federal agencies may not be sued under Bivens. Id. at 69 (citing FDIC v. Meyer, 510 U.S. 471, 486 (1994)). Accordingly, plaintiff's attempt to impose liability on the BOP fails as a matter of law.

### b. Equal Protection Claim

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate governmental purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). In order to state a claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that defendants acted with intentional discrimination against plaintiff or against a class of inmates which included plaintiff. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740

(9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren, 152 F.3d at 1194.

Plaintiff has not alleged any facts that support a claim he was intentionally discriminated against based on his membership in a protected class. Further, plaintiff has not alleged any facts linking the named defendants to the actions complained of. Supervisory personnel cannot be held liable in a Bivens action for the actions of their employees under a theory of respondeat superior. Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991). For these reasons, plaintiff's original complaint does not contain any cognizable claims for relief based on the violation of the Equal Protection Clause.

          c.     Access to the Courts Claim

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. The State is not required to enable the inmate to discover grievances or to litigate effectively once in court. Id.

Inmates do not have the right to a law library or legal assistance. Id. at 351. Law libraries and legal assistance programs are only the means of ensuring access to the courts. Id. Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Id. Rather, an inmate claiming interference with or denial of access to the courts must show that he suffered an actual injury. Id.

Plaintiff has not alleged any facts that support a claim that he was denied access to the courts. Plaintiff has neither alleged an "actual injury" nor alleged any facts linking the named defendants to the acts and omissions complained of. Accordingly, plaintiff's original complaint fails to state a claim upon which relief may be granted for denial of access to the courts.

///

1)      Legal Mail Issues

With respect to the opening of plaintiff's mail from the courts, the mere fact that prison officials open and conduct a visual inspection of a prisoner's legal correspondence does not state a claim for violation of a prisoner's constitutional rights. See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Mitchell v. Dupnick, 75 F.3d 517, 523 (9th Cir. 1996). Prison officials may, consistent with the First Amendment, open mail from attorneys in the presence of the prisoner for visual inspection. See Wolff v. McDonnell, 418 U.S. 539, 576-7 (1974); Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981). In Wolff v. McDonnell, the Supreme Court noted that inspecting mail from attorneys in the presence of the inmate did all, and perhaps even more, than the Constitution requires. Id. at 577. The issue of whether or not prison officials may also, consistent with the First Amendment, open and visually inspect mail from attorneys outside the presence of the prisoner has not been decided by the Supreme Court or by the Ninth Circuit.

In Wolff v. McDonnell, the legal mail at issue was mail sent to respondent from his own attorney. Correspondence between an attorney and a client is entitled to special protection under the attorney-client privilege. "Mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." Keenan v. Hall, 83 F.3d 1083, 1094 (9th Cir. 1996). "All correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in the court's files." Id. at 1094 (citing to Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987)). Thus, plaintiff's conclusory allegation that his "legal" mail from the court was opened is insufficient to give rise to a cognizable claim for relief.

With respect to the hindrance of plaintiff's ability to mail documents, prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). Thus, interference with plaintiff's outgoing mail may provide a basis upon which to impose liability under Bivens for violation of the First Amendment. However, plaintiff's conclusory allegations are insufficient to support a such claim at this time.

d.      Due Process Claim

Although plaintiff does not specifically allege a claim for relief based on denial of due process, plaintiff's allegations concerning his placement in segregation without a hearing and

without documentation suggest such a claim. The court will therefore address the claim.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of segregation. See Hewitt, 459 U.S. at 466-68. The existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

Plaintiff has alleged no facts that establish the existence of a liberty interest in remaining free from segregation. Id.; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted). Because plaintiff has not established the existence of a liberty interest in remaining free from segregation, plaintiff has not stated a cognizable claim for relief for denial of due process.

The Due Process Clause itself does not confer on inmates a liberty interest in a particular classification status, see Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976), and prison inmates do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one facility to another. Meachum v. Fano, 427 U.S. 215, 224-25 (1976). Therefore, plaintiff's complaints that his custody level was incorrect and that he should not have been housed at USP-Atwater are not of constitutional significance.

      e. <u>Retaliation Claim</u>

Finally, although plaintiff does not allege a claim for relief for retaliation, plaintiff's allegations suggest that he may have been retaliated against. Plaintiff may be able to amend to state such a claim. Therefore, plaintiff is notified that allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a claim pursuant to <u>Bivens</u>. See <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985); <u>see also</u> <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135 (9th Cir. 1989); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).

  2. <u>Amended Complaint</u>

    a. <u>Events at FDC-Seatac and FCI-Sheridan</u>

      1) <u>Plaintiff's Allegations</u>

In his amended complaint, plaintiff alleges that on or around April 3, 2000, while he was housed at the Federal Detention Center-Seatac in the state of Washington, defendants Lewis and Pitts "arrested" him for failing to make his bed and placed him in the "hole" without notice and an opportunity to be heard. On April 5, 2000, defendants Za and Appleton found plaintiff guilty of being untidy, suspended his commissary privileges for thirty days, and generated an incident report which resulted in an increase in his security score. As a result of the increased security score, plaintiff was transferred to a higher security prison.

On November 28, 2000, while plaintiff was still a pre-trial detainee at FDC-Seatac, plaintiff sought legal advice concerning his case from his attorney over the telephone, which was monitored by defendant Herrera. Plaintiff alleges that shortly after the phone call, he was arrested for phone abuse and confined to the "hole" without notice and an opportunity to be heard. That evening, a staff member sent a false report misrepresenting the phone conversation to defendant Germaine, who was the hearing officer. Plaintiff alleges that between November 28, 2000 and December 19, 2000, he

7

remained in the "hole" without knowing the charges against him or the evidence against him. Plaintiff requested the text of the rule he was accused of violating and the presence of the phone monitor, the recording, and his attorney at any hearing that was held, but was told by defendant Germain that the text of the rule was unavailable and the evidence was confidential. Plaintiff alleges that his attorney requested to be present during any hearing held, but his request was denied by order of defendant Herrera.

Plaintiff alleges that he was brought out for four separate hearings but on each occasion was denied advance notice of the charges, the right to present evidence, and the right to call witnesses. Plaintiff was found guilty at each hearing. At each new hearing, plaintiff was informed that the prior hearing had been invalidated and a new charge was being brought, although the identical facts were involved at each hearing. The last hearing occurred on December 19, 2000. Defendant Germaine informed plaintiff that he was accused of using the phone to instruct someone how to commit a crime. Plaintiff requested to see the text of the code he was being charged with violating, to know the crime he was accused of instructing how to commit, and to have present witnesses and the audio tape, but plaintiff's requests were denied. Plaintiff alleges that during the hearing he was denied due process because a magistrate was not present and because defendant Germaine altered the phone monitor's statement by adding facts that were not in the statement. Plaintiff alleges Germaine found him guilty despite conceding to plaintiff that plaintiff had not intended to tell anyone how to commit a crime. Plaintiff alleges he was told to stick to talking about the weather, which would result in plaintiff's inability to obtain advice from his attorney. Plaintiff alleges that as a result of the guilty finding, his security score increased, which led him to be transferred to a higher security facility, he was confined to the "hole" for thirty days, and he was denied phone privileges for sixty days.

Plaintiff alleges that on February 7, 2001, after seventy-two days without phone privileges, he learned that his father had cancer and he attempted to call his father. Plaintiff's call was blocked, he was "arrested" for phone abuse, and he was confined to the "hole" without notice and an opportunity to be heard. Plaintiff alleges that during his hearing, he was again disallowed from seeing the text of the rule he violated, was not allowed to present evidence, and was not allowed to call witnesses. Plaintiff alleges there was no magistrate present, and that defendant Germain, the

hearing officer, falsified evidence by stating that plaintiff admitted being aware he was still on phone restriction. Plaintiff was found guilty and had his security score increased for a third time, leading to his transfer to a higher security facility. Plaintiff was confined to the hole for ten days, had his release date extended by seven days, and lost phone privileges for one-hundred eighty days. Plaintiff alleges that defendants Haro and McGrew refused to accept or consider his appeals, and defendant Herrera ratified the conduct at the disciplinary hearing in a letter to plaintiff.

On or around July 31, 2001, after plaintiff was transferred to the Federal Correctional Institution-Sheridan in the state of Oregon, plaintiff alleges that defendants Hood and Angus retaliated against him for his perceived status as a jailhouse lawyer by submitting to the BOP Western Regional headquarters a petition requesting a transfer to the higher security United States Penitentiary-Atwater. Plaintiff alleges that the petition contained false information, including the statement that he was disciplined at FCI-Sheridan for untidiness and phone abuse, despite the fact that the disciplinary violations at issue occurred at FDC-Seatac and that plaintiff has already had his security score increased for the disciplinary violations. Plaintiff alleges that the petition also falsely stated that he had a serious prior conviction, an outstanding detainer against him, a history of escape, and a history of drug and alcohol abuse, and was an absconding debtor to the court. Plaintiff alleges that in addition, defendants Taylor, Hood, and Angus falsely stated that although plaintiff had been transferred to their facility to receive counseling available only there, plaintiff had no noteworthy mental health issues and there was no information to support a continued need for the designation. Plaintiff alleges that he had made it clear he needed counseling to overcome severe depression caused by the kidnapping of his son. Plaintiff alleges that as a result of the petition, his security level was increased by defendants Haro and Penney in August of 2001, and he was transferred to a maximum security penitentiary fifteen hundred miles from his family on August 31, 2001.

          2)      Plaintiff's Claims

                  (a)      Due Process Claims

With the exception of plaintiff's loss of time credits, discussed below, plaintiff has not alleged any facts that support a finding that he had a protected liberty interest at stake with respect to the discipline imposed at his hearings. Sandin, 515 U.S. at 484. Specifically, plaintiff does not

9

have a liberty interest at stake with respect to confinement in general population as opposed to the "hole," commissary privileges, telephone privileges, his security score, or being housed at a particular institution. Because there was no protected liberty interest at stake, plaintiff may not pursue a claim for relief premised on the deprivation of liberty without due process. Further, the resolution plaintiff's inmate appeals and/or the refusal of prison officials to consider his appeals does not rise to the level of a constitutional violation. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner).

Turning to the extension of plaintiff's sentence by seven days, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

In this instance, plaintiff's allegations that he was not allowed to see the text of the rule he violated and that no magistrate was present is of no consequence. Although plaintiff was entitled to written notice of the charges, plaintiff was not entitled to a copy of the rule or regulation he allegedly violated, and plaintiff was not entitled to the presence of a judicial officer at a prison disciplinary hearing.

With respect to the evidence and witnesses, plaintiff's allegations fall short of stating a claim, although plaintiff may be able to cure the deficiencies. Although plaintiff alleges that no evidence

was presented, plaintiff's allegations establish that he testified, thus belying the claim that no evidence was presented. It appears that what plaintiff may be challenging is defendant Germaine's refusal to allow him to present evidence that his father had cancer. This is insufficient to give rise to a claim. "Some evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . ." Id. at 455-56 (emphasis added). Thus, there is no constitutionally mandated requirement that plaintiff be allowed to present specific items of evidence in order for due process to be satisfied, particularly where the evidence appears intended to support plaintiff's explanation for making the phone call, rather than to support plaintiff's position that he was not guilty of committing the disciplinary violation.

Prisoners have a right to call witnesses during disciplinary hearings, but that right is not absolute. Wolff, 418 U.S. at 566. It must be balanced against the need to protect the right of prison administrators to exercise discretion and to limit the proceedings for the sake of institutional safety and security. Id. Where the right to call witnesses is infringed upon, prison officials must provide some explanation for the denial of the request. Walker, 14 F.3d at 1421. The explanation may occur at the disciplinary hearing or sometime later. Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (citing Ponte v. Real, 471 U.S. 491, 497 (1985)).

In this instance, plaintiff's conclusory assertion that he was not allowed to call witnesses is insufficient to state a claim. Plaintiff must set forth some facts that would support the claim that his right to call witnesses at his disciplinary hearing was infringed upon without a legitimate penological purpose. Koenig at 423.

(b)     Retaliation Claims

Plaintiff has a protected right to confer with his attorney and to redress grievances through the court system. The allegations that documents were falsified to raise plaintiff's security score and give him an adverse prison transfer in retaliation for plaintiff's contact with his attorney and because plaintiff was perceived as a jailhouse lawyer provide a basis upon which to impose liability. However, the only defendants plaintiff specifically alleges retaliated against him are Hood, Angus,

11

and Taylor. Plaintiff alleges that after his transfer to FCI-Sheridan, these three defendants falsified documents so that plaintiff would be sent to UPS-Atwater because they perceived plaintiff to be a jailhouse lawyer. Accordingly, plaintiff's allegations are sufficient to give rise to a claim for relief against Hood, Angus, and Taylor for retaliation. However, plaintiff's consclusory assertion that he was retaliated against, set forth in the introduction of his amended complaint, is insufficient to give rise to a retaliation claim against staff members at FDC-Seatac. Plaintiff has alleged no facts linking the actions or omissions of the FDC-Seatac defendants to a retaliatory motive.

(c)     Failure-to-Protect Claim

Plaintiff alleges a claim for relief based on his transfer to a higher security prison, which plaintiff contends endangered his life. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 835.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive

to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

The transfer of plaintiff to a higher security prison is simply not a deprivation that is "sufficiently grave to form the basis of an Eighth Amendment violation." Id. Plaintiff's claim that his adverse transfer to a maximum security prison violated his Eighth Amendment rights fails as a matter of law.

        b.        Events at USP-Atwater

                1)        Plaintiff's Allegations

On December 5, 2002, after plaintiff's transfer to USP-Atwater, defendant Smith, a law librarian, asked him to sign an i.o.u. to the United States Treasury for the privilege of typing his legal documents. After plaintiff wrote a code section next to his signature, defendant Smith attempted to make plaintiff resign the i.o.u. omitting the code section. After plaintiff refused, defendant Smith falsely charged him with refusing to obey an order, insolence, and obstruction of staff.

On December 12, 2002, defendant Potter conducted the disciplinary hearing. Plaintiff alleges that the hearing was untimely and there was no adjudicator present. Plaintiff was found guilty and had his phone privileges restricted for fifteen days. Plaintiff alleges that defendant Potter failed to advise him that a guilty finding would preclude plaintiff's transfer to a more appropriate facility, which led plaintiff to elect not to appeal because he believed the loss of his phone privileges for fifteen days would be the only consequence.

Plaintiff alleges that on February 16, 2003, he petitioned to be allowed to transfer back to FCI-Sheridan, but defendants Haro and Penney refused his request. On the same date, defendant Schultz sold two inmates metal cabinet locks despite knowing the inmates had a history of violence and despite the availability of plastic locks. On April 17, 2003, plaintiff was attacked by the two inmates, who used the metal locks as weapons. Plaintiff was injured and confined to the "hole."

13

Between April 17, 2003 and November 5, 2003, plaintiff requested a hearing to challenge his placement in the "hole," a transfer to a more appropriate facility, and administrative remedy forms, but his requests were denied. Plaintiff alleges that during this timeframe, he was denied access to the law library and legal organizational material, and was prevented from purchasing more than one week's worth of legal envelopes, calling his attorneys or the courts, weighing his legal papers to determine postage, boxing his legal material for shipment, sharpening his pencils, or possessing erasers, pens without having to have the outer casings removed, paper clips, white-out, tape, glue, and folders. Plaintiff was also denied access to a chair, table, or typewriter, and prevented from acquiring a photocopied list of attorneys from the phone book. Plaintiff alleges that on or around May 5, 2003, he was charged $97.00 for the use of a typewriter, while inmates not housed in the "hole" were able to use a typewriter free of charge. Plaintiff alleges that as a result of the charge, he was indigent and defendants Moyer and Orozco refused to "front" him stamps, which prevented him from filing a Rule 59(e) motion and caused him injury.

Plaintiff alleges that from June 23, 2003 to September 10, 2003, defendants refused to make copies for him, which caused a delay in one of his cases. Between July 15, 2003, and August 28, 2003, defendant Moyer took and kept forty copies of a civil rights complaint form, purportedly to weigh it for postage and box it. After defendant Moyer returned it un-weighed and un-boxed, he told plaintiff that he did it to retaliate against plaintiff for trying to file suit.

Plaintiff sought a hearing and the return of his $97.00 via the administrative remedy process. Plaintiff alleges that defendant Moyer never responded to his appeal using a BP-8 form, and defendants Schultz, Orozco, and Moyer refused to accept his appeal using a BP-9 form. On July 1, 2003, plaintiff's BP-10 form, submitted to the regional office, was denied, and on August 13, 2003, plaintiff's BP-11 form, submitted to the central office was denied.

Plaintiff alleges that from July 22, 2002 to November 5, 2003, defendants Nance and Talmer, who were his attorneys, refused to pursue his appeal, in denial of his due process rights, and between September 1, 2003 and November 5, 2003, defendant Gant denied his requests to call his attorney.

Plaintiff alleges that he conducted a hunger strike between September 30, 2003 and October 16, 2003, but discontinued it when he was allowed the use of a typewriter. Plaintiff alleges that

defendant Smith "effectively confiscated the legal work he typed." Finally, plaintiff alleges that on October 24, 2003, he resumed his hunger strike and kept a sign in his cell window, which stated that his demands were a typewriter, legal calls, weighing of his legal papers, and permission to buy envelopes. Plaintiff alleges that defendants Schultz, Gonzales, Moyer, Orozco, and Gant read his sign but continued to let him starve.

### 2) Plaintiff's Claims

#### (a) Retaliation Claims

To the extent that plaintiff is attempting to impose liability on defendant Smith for retaliation based on the incident in which she wrote plaintiff up for refusing to re-sign the i.o.u., such claim fails. Plaintiff has not alleged any facts that would support a claim that defendant retaliated against him for exercising a protected First Amendment right, without any legitimate penological purpose. Rhodes, 408 F.3d at 567-68. Plaintiff's allegations establish he refused to obey defendant's order and was thereafter written up. Although plaintiff may have disagreed with defendant's order, he does not a protected right under the First Amendment to disobey orders of staff.

With respect to the incident in which defendant Moyer returned plaintiff's legal papers un-boxed and un-weighed in retaliation for plaintiff's litigation activities, the action of defendant Moyers is insufficient to support a claim because it was not sufficiently adverse to plaintiff. See Dawes v. Walker, 239 F.3d 489, 492-93 (2d Cir. 2001) (only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation) (quotations omitted).

#### (b) Due Process Claims

##### (1) Disciplinary Hearings

Plaintiff's allegations that his phone restrictions were suspended for fifteen days, and he was precluded from transferring to a more appropriate facility, confined to the "hole," and denied administrative remedy forms do not provide a basis upon which to impose liability for denial of due process because plaintiff does not have a protected liberty interest at stake. Sandin, 515 U.S. at 484. Further, the procedural deprivations complained of by plaintiff are not of constitutional significance. Wolff, 418 at 563-71. Finally, the denial of plaintiff's request to transfer back to FCI-Sheridan by

15

defendants Haro and Penney, and the involvement of defendants Moyer, Schultz, and Orozco in the processing and resolution of plaintiff's appeal of the $97.00 charge for the typewriter provide no basis upon which to impose liability under Bivens. Sandin, 515 U.S. at 484; Ramirez, 334 F.3d at 860.

### (2)  Ineffective Assistance of Counsel

Effective assistance of appellate counsel is guaranteed by the Due Process Clause. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). See, e.g. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986). Plaintiff must allege facts that would support the claim that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, plaintiff would have prevailed on appeal. Miller, 882 F.2d at 1434 & n. 9 (citing Strickland, 466 U.S. at 694; Birtle, 792 F.2d at 849). Plaintiff's conclusory allegation that defendants Nance and Talmer, his attorneys, failed to prosecute his appeal for a certain period of time is insufficient to support a claim that defendants violated his constitutional rights. Further, plaintiff's conclusory allegation that defendant Gant refused to let him call his attorney is insufficient to support a claim that defendant denied him access to the courts. Lewis, 518 U.S. at 351.

### (c)  Failure-to-Protect Claims

Plaintiff's allegations that defendant Schultz sold two inmates metal locks which the inmates subsequently used to attack plaintiff and that defendants Schultz, Gonzales, Moyer, Orozco, and Gant allowed plaintiff's hunger strike to continue are insufficient to support a claim that defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." Farmer v. Brennan, 511 U.S. at 837. Accordingly, plaintiff fails to state a claim for relief against defendants for violation of the Eighth Amendment.

### (d)  Access to the Courts Claim

Plaintiff's allegations fall short of stating a cognizable claim based on denial of access to the courts. Plaintiff has not established that he suffered any "actual injury" as a result of the conditions,

actions, and omissions complained of. Lewis, 518 U.S. at 351. Further, although plaintiff alleges that he was prevented from filing a Rule 59(e) motion and one of his cases was delayed, these allegations are too conclusory for the court to determine that plaintiff suffered an "actual injury."

(e)    Claims Stemming from Typewriter Charge

Regarding plaintiff's claim that he was required to pay $97.00 to use a typewriter while general population inmates were not, it appears that plaintiff may be attempting to state a due process claim and/or an equal protection claim. Plaintiff has not alleged any facts that support a claim that he was deprived of a protected property interest without due process of law, Wolff, 418 U.S. at 556, and plaintiff has not alleged any facts that support a claim that plaintiff was intentionally discriminated against based on his membership in a protected class, without a rational relationship to a legitimate governmental purpose. Serrano v. Francis, 345 F.3d 1071, 1081, 82 (9th Cir. 2003); see United States v. Lemay, 260 F.3d 1018, 1030-31 (9th Cir. 2001) (no equal protection claim where no burden on fundamental right or discrimination based on membership in suspect class). Accordingly, plaintiff's allegations fall short of stating a claim under either the Due Process Clause or the Equal Protection Clause.

C.    Conclusion

With the exception of the retaliation claim against defendants Hood, Angus, and Taylor, the court finds that plaintiff's complaint does not contain any claims upon which relief may be granted under Bivens. The court will provide plaintiff with the opportunity to file a second amended complaint curing the deficiencies identified by the court in this order.

Plaintiff is informed he must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint

supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Accordingly, based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's original and amended complaints are dismissed, with leave to amend, for failure to state any claims upon which relief may be granted under Bivens;
2. The Clerk's Office shall send plaintiff a Bivens complaint form;
3. Within **thirty (30) days** from the date of service of this order, plaintiff shall file a second amended complaint; and
4. If plaintiff fails to file a second amended complaint in compliance with this order, the court will recommend that this action be dismissed, without prejudice, for failure to obey a court order.

IT IS SO ORDERED.

**Dated:   August 16, 2005**              /s/ Sandra M. Snyder
icido3                                         UNITED STATES MAGISTRATE JUDGE